25 F.3d 1039
 73 A.F.T.R.2d 94-2239
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In Re: Alfred W. FORD, Debtor.
Alfred W. FORD; Jacqueline Wendy Ford; Richard W. Ford,
Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee,
and
MOUNTAIN FARM CREDIT, ACA, Party in Interest.
 No. 93-2488.
 United States Court of Appeals, Fourth Circuit.
 Submitted: April 26, 1994.
Decided: June 6, 1994.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Shelby. Richard L. Voorhees, Chief District Judge. (MISC-93-50, BK-90-41037)
 Edward C. Hay, Jr., Whalen, Hay, Pitts, Hugenschmidt, Master, Devereux & Belser, Asheville, North Carolina, for Appellants.
 Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, Gary D. Gray, Billie L. Crowe, Jerry W. Miller, United States Attorney, Tax Division, United States Department of Justice, Washington, D.C., for Appellee.
 W.D.N.C.
 AFFIRMED.
 Before MURNAGHAN, WILKINS, and MICHAEL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Alfred W. Ford, Wendy Ford, and Richard Ford appeal from the district court's order granting summary judgment and setting aside a transfer as fraudulent pursuant to the Federal Debt Collection Procedures Act ("FDCPA"). See 28 U.S.C.A.Secs. 3001-3308 (West Supp.1993). The Fords argue that the retroactive application of the FDCPA violates due process and that the district court erred in granting summary judgment on whether Alfred Ford intended to defraud the United States. We disagree.
 
 
 2
 * On July 28, 1986, Alfred Ford transferred approximately 142 acres of land* to his children, Wendy and Richard Ford, in exchange for no consideration. After the transaction, Alfred Ford continued to live on the land and made the mortgage payments on the property.
 
 
 3
 At the time of the conveyance, Alfred Ford owed the United States unpaid taxes, penalties, and interest. In addition, Alfred Ford owed the maximum of $1500 on each of his three credit cards. Subsequently, Alfred Ford conceded additional tax liability.
 
 
 4
 On December 28, 1990, Alfred Ford filed for bankruptcy protection under Chapter 13. The government filed a secured claim based on Alfred Ford's unpaid federal taxes and instituted this adversary proceeding against the Fords, seeking avoidance of the transfer. The government claimed that the transfer was fraudulent under the FDCPA, arguing that Alfred Ford was insolvent at the time of the transfer or became insolvent as a result thereof, the transfer was made without receiving a reasonably equivalent value, and the transfer was made with the actual intent to hinder, delay, or defraud Alfred Ford's creditors.
 
 
 5
 At an evidentiary hearing, the government established that: (1) the transfer was to Ford's children; (2) Alfred Ford retained control of the property by living on it and by paying the mortgage; (3) at the time of the transfer, the United States had sued Alfred Ford for back taxes; (4) Alfred Ford had only one other asset at the time; (5) Alfred Ford received no consideration for the property, which was worth over $75,000; (6) Alfred Ford had other debts which left him insolvent or nearly insolvent after the transfer; and (7) Alfred Ford had incurred substantial tax liability shortly before the transfer. The Fords did not dispute this evidence. Alfred Ford did not even state, under oath, that he lacked the requisite intent. Accordingly, the bankruptcy judge concluded that Alfred Ford had transferred the property with actual intent to hinder, delay, or defraud a creditor and recommended that the court set aside the transfer to the extent of Alfred Ford's debt to the United States. The district court accepted the bankruptcy judge's findings and granted summary judgment in favor of the government. The Fords timely appeal.
 
 II
 
 6
 The Fords argue that the retroactive application of the FDCPA violated their due process rights. To withstand constitutional scrutiny, the retroactive application of legislation must be justified by a rational legislative purpose. See Pension Ben. Guar. Corp. v. R. A. Gray & Co., 467 U.S. 717, 730 (1984); United States v. Monsanto Co., 858 F.2d 160, 173-74 (4th Cir.1988), cert. denied, 490 U.S. 1106 (1989). Prior to the FDCPA, the federal government was subject to many different and, sometimes, overlapping state laws to collect debts owed to the United States. H.R.Rep. No. 736, 101st Cong., 2d Sess. 24, reprinted in 1990 U.S.C.C.A.N. 6630, 6632. The purpose of the FDCPA was "to create a comprehensive statutory framework for the collection of debts owed to the United States." Id. at 23, reprinted at 1990 U.S.C.C.A.N. 6631. Applying the FDCPA to actions pending on the effective date of the legislation furthers its purpose of creating a comprehensive statutory framework. Therefore, the retroactive application of the FDCPA is justified by a rational legislative purpose, and it is constitutional.
 
 III
 
 7
 The Fords also assert that the district court erred in granting summary judgment in favor of the government. Finding that no genuine issue as to any material fact exists as to whether Alfred Ford intended to defraud the United States, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); see also Fed.R.Civ.P. 56(c), we affirm.
 
 
 8
 All the evidence before the district court demonstrated that Alfred Ford had an actual intent to defraud. The transfer was to his children; he retained control of the property, both by living on it and by paying the mortgage; at the time of the transfer, the United States had sued him for back taxes; he had only one other asset at the time; he received no consideration for the property, which was worth over $75,000; he had other debts which left him insolvent or nearly insolvent after the transfer; and he had incurred substantial tax liability shortly before the transfer. See 28 U.S.C.Sec. 3304(b)(2).
 
 
 9
 Because the Defendants neither disputed these facts nor added any evidence to demonstrate that Alfred Ford did not act with actual intent, we find that the district court did not err in concluding that there was no genuine issue of material fact as to whether Alfred Ford transferred the property with the actual intent to defraud the United States. See Fed.R.Civ.P. 56(e); Charbonnages de France v. Smith, 597 F.2d 406, 414-15 (4th Cir.1979) (summary judgment is war ranted on issue relating to a party's state of mind if the individual's intentions are so unequivocal as to present no genuine issue of fact).
 
 
 10
 Because the retroactive application of the FDCPA was rationally related to a legitimate purpose and because there was no genuine issue of material fact as to whether Alfred Ford transferred the property with the intent to defraud, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the material before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 In January 1987, the property was appraised at $75,000. This property constituted all of Ford's assets with any value except for a 1983 Omni automobile